United States District Court
Southern District of Texas
**ENTERED**
February 05, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **MICHAEL T. JORDAN,** *et al.*, § § § | |
| *Plaintiffs*, § | |
| VS. § | CIVIL ACTION NO. 4:23-cv-01092 |
| § | |
| **BANK OF AMERICA, N.A.,** § § | |
| *Defendant*. | |

## MEMORANDUM & ORDER

Pending before the Court is a Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion") filed by Defendant Bank of America, N.A. ("Defendant" or "BOA"). Doc. 15. The Court held a hearing on the Motion on December 11, 2023, and took the matter under advisement. After considering the Motion, briefings, arguments made at the hearing, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss for the reasons explained below.

**I.   BACKGROUND**

   **A.  Alleged Facts**

In 2005, Plaintiff Michael Jordan ("Michael" or "Borrower") bought the real property located at 7739 Antoine Dr., Houston, TX 77088 (the "Property"). Doc. 15 ¶ 8. Michael partially financed the purchase by taking out at $61,500 mortgage loan from GMAC Mortgage Corporation secured by a first lien deed of trust on the Property. *Id.* ¶ 9. He subsequently took out a loan of $34,061.03 from Defendant secured by a junior lien deed of trust on the Property (the "loan"). *Id.* ¶ 10; *see also* Doc. 25 at 7 ("On November 21, 2006, Borrower executed a Deed of Trust on the Property in favor of BANA."); *id.* at 8 ("The Deed of Trust granted BANA the power of sale upon

Borrower's default.").

In February 2021, Michael gave power of attorney to his daughter, Plaintiff Uvalda Jordan ("Uvalda," and together with Michael, "Plaintiffs"). Doc. 15 ¶ 15. Michael defaulted on the loan secured by the junior lien due to declining health and financial stress caused by, among other factors, a rare and extreme freeze in Texas, and the COVID-19 pandemic. *Id.* ¶ 16.

In May 2022, Defendant filed a Notice of Acceleration and Notice of Trustee's Sale in the Harris County Property Records. Doc. 25 at 9. Parties do not dispute that the loan was in default at this time. In July 2022, the Trustee conducted a foreclosure sale and sold the Property to SSS Fortune, LLC for $167,500. Doc. 15 ¶ 12. At the time of the sale, Michael owed Defendant approximately $9,967. *Id.* ¶ 13. The Property, he alleges, had a fair market value of at least $225,000. *Id.* ¶ 14.

In spring 2022, Plaintiffs contacted Defendant to start the process of applying for loss mitigation. *Id.* ¶ 17. Before the foreclosure sale has been noticed or scheduled, Plaintiffs claim they submitted a loss mitigation application. *Id.* They were assigned Jansen Poole as the Loan's loss mitigation case manager. *Id.* Poole allegedly confirmed on the phone that Defendant had received the application and that the foreclosure activity was on hold while Defendant reviewed the application. *Id.* ¶ 18. However, Plaintiffs then learned of the foreclosure sale scheduled to take place under the loan on July 5, 2022. *Id.* ¶ 19. Plaintiffs contacted Defendant, and were informed that additional documents were needed, and that the sale would not take place if these documents were provided. *Id.* ¶ 20. Plaintiffs provided the required documents. *Id.* ¶¶ 21-24, 27. Plaintiffs also indicated that they intended to pay the loan off and asked for wire instructions. *Id.* ¶ 26. On July 5, Plaintiffs called Defendant to check on the status of the loss mitigation application. *Id.* ¶ 29. Defendant's representative informed them that Defendant was still missing one form, Plaintiffs

informed her that they had already provided the form, and the representative advised them to send it again. *Id.* The representative did not inform Plaintiffs that the foreclosure sale was taking place that day.

Two days later, Plaintiffs received a cold call stating the Property had been foreclosed on. *Id.* ¶ 30. Plaintiffs called Defendant and spoke with their case manager, Poole, who stated that one form was still needed (which Plaintiffs allege they had already submitted) and that the foreclosure was on pause while Defendant waited for the document. *Id.* When Plaintiffs asked about the cold call they had received, Poole put Plaintiffs on hold and then came back on the line and admitted that the Property was foreclosed two days prior. *Id.* ¶ 32. The line was disconnected. *Id.* Plaintiffs attempted multiple times after that to speak with Defendant and Defendant's lawyers about the foreclosure. *Id.* ¶ 33-37. Plaintiffs allege that, during one of these calls, Defendant's representative "admitted the foreclosure was not right because BOA told Plaintiffs the sale was paused and on hold and would not take place when that was not true." *Id.* ¶ 37.

In August 2022, Defendant's lawyer emailed Plaintiffs with two options: either Defendant could rescind the sale and restore the Property in Michael's name, or Plaintiffs could accept the excess proceeds resulting from the sale. *Id.* ¶ 38. Plaintiffs responded that they would accept the recission of the sale and additionally requested that all construction work commenced on the Property by the third-party buyer, SSS Fortune, be completed and up-to-code, and that any hazards resulting from the work be remedied. *Id.* ¶ 41. Plaintiffs allege that the buyer had begun to make unauthorized improvements to the Property that were not approved by the homeowners' association and were not up-to-code, leaving the Property uninhabitable. *Id.* ¶¶ 47-48. Defendant's lawyer emailed Plaintiffs stating that Defendant was "obtaining bids from vendors with respect to the repairs/work needed at the property" and that Defendant had "instructed [the lawyer] would

move forward with the sale recission process." *Id.* ¶ 44. Plaintiffs asked for a timeline, and Defendant's lawyer replied that the sale recission process would take 1-2 weeks once the required documents were completed and that he could not provide a time estimate for work to be performed at the Property. *Id.* ¶ 45.

In September 2022, Defendant's lawyer called Plaintiffs and told them Defendant would not (1) complete a rescission of the foreclosure sale and have title to the Property restored to Michael's name; (2) complete all work and improvements started at the Property by SSS Fortune; (3) remedy hazards resulting from the work and improvements started at the Property by SSS Fortune. *Id.* ¶ 46.

### B. Procedural History

Plaintiffs commenced this action in state court in February 2023, alleging violations of the Real Estate Settlement Procedures Act (RESPA), breach of contract, common law fraud, fraud by non-disclosure, violations of the Texas Debt Collection Act (TDCA), negligent misrepresentation, promissory estoppel, and a claim for excess proceeds. Doc. 1-1. Defendant removed the case to this Court. Defendant previously brought a Motion to Dismiss under Rule 12(b)(1) for lack of standing with respect to Uvalda, and under 12(b)(6) for failure to state a claim on all claims. Doc. 6. This Court dismissed with prejudice Plaintiffs' TDCA and RESPA claims and dismissed the other claims without prejudice to Plaintiffs repleading. *See* Minute Entry dated 06/07/2023.

Plaintiffs filed their First Amended Complaint (the "Complaint") in June 2023. Doc. 15. Defendant now moves to dismiss Uvalda's claims for lack of standing, pursuant to Rule 12(b)(1), and moves to dismiss the Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(6), for failure to state a plausible claim for relief.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

A court may dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A court lacks subject matter jurisdiction over a plaintiff if that plaintiff lacks standing to bring a claim. *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017). To establish constitutional standing under Article III, a moving party must show (1) injury in fact which is (a) concrete and particularized and (b) actual or imminent (the "case or controversy" requirement); (2) a causal connection between the injury and the conduct complained of; and (3) likely that the injury will be redressed in a favorable direction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

### B. Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complainant must plead "enough facts to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This must be more than "[a]n unadorned, the-defendant-unlawfully-harmed-me accusation" or "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the court must accept well-pleaded facts as true, legal conclusions are not entitled to the same assumption of truth. *Id.*

### III. ANALYSIS

#### A. Whether Uvalda has Standing Under Rule 12(b)(1)

Defendant first argues that the Court should dismiss Uvalda's claims against Defendant pursuant to Rule 12(b)(1) because she lacks Article III standing. According to Defendant:

> It is indisputable that Non-Borrower [Uvalda] is not a party to the Note or Deed of Trust, as those contracts were executed by Borrower only. Thus, Non-Borrower does not have standing to bring any claims against BANA relating to the Note, the Deed of Trust, the servicing of the Loan, or the foreclosure sale. Because each of Plaintiffs' claims stems from the Note and Deed of Trust, and because Non-Borrower is not a party to those contracts, she lacks Article III standing.

Doc. 25 at 12. Plaintiffs do not respond to this part of Defendant's MTD. Pursuant to Local Rule 7.4, failure to respond to a motion will be taken as representation of no opposition. Moreover, the Court agrees with Defendant that Uvalda, as a non-borrower, lacks Article III standing as to the claims remaining in the lawsuit. The Court dismisses with prejudice Uvalda' claims pursuant to Rule 12(b)(1).

#### B. Whether Michael Plausibly States Claims under Rule 12(b)(6)

Having dismissed Uvalda's claims under Rule 12(b)(1), the Court turns to considering the claims properly asserted by Michael. The Complaint alleges breach of post-foreclosure contract, common law fraud, fraud by non-disclosure, negligent misrepresentation, and promissory estoppel. Defendant asserts that Michael fails to state a plausible claim for relief and urges the Court to dismiss the Complaint in its entirety.

##### i. Breach of a Post-Foreclosure Contract

Michael alleges that, following the foreclosure, he entered a valid contract with Defendant to rescind the foreclosure sale, complete all construction work to bring the Property up to code, and remedy any hazards resulting from the work by the third-party purchaser. On September 8, 2022, Defendant informed Michael that it would not rescind the foreclosure sale nor make the

improvements to the Property. Doc. 28 at 3. Michael claims that "BANA breached the [post-foreclosure] contract by refusing and failing to perform their promises, by voluntarily acting to make its performance of its contractual obligations impossible, by voluntarily acting to make Michael Jordan's performance of his contractual obligations impossible, by repudiating the contract, and by terminating the contract." Doc. 28 at 13.

Under Texas law, the elements of a breach of contract claim are: "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003). To form a valid and binding contract, the following elements are needed: "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F. Supp. 3d 552, 567 (S.D. Tex. 2016) (quoting *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex.App.–Dallas 2011, no pet.)).

According to Michael, a series of emails between the parties (outlined below) forms the basis of the alleged contract because "there was an offer, a clear and definite acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutually binding, and consideration." Doc. 28 at 12.

- On August 3, Defendant's attorney, Jeffrey S. Aiken, sent Plaintiffs an offer via email to either rescind the foreclosure sale or provide the excess proceeds. The email encouraged Plaintiffs to make a decision as quickly as possible because the "Third Party Purchaser is presently cooperating and we want to keep things cordial with them." Doc. 15 ¶ 38.

- On August 11, Plaintiffs accepted the recission and requested that all work commenced on the house by the third-party purchaser be completed and up-to-code and that any hazards be remedied. *Id.* ¶ 41.

- On August 30, Defendant's attorney emailed Plaintiffs stating Defendant was obtaining bids from vendors with respect to the repair work, and that Defendant "also instructed me to move forward with the sale recission process. This will ultimately place title back in [Michael's] name (as the borrower)." *Id.* ¶ 44.

- On August 31, in response to an email from Plaintiffs asking how the long the sale recission and repair process would take to complete, Defendant's attorney confirmed that "[o]nce everything is lined up, the recission process can be completed in one – two weeks" and "[a]s for the work to be performed at the property, that is not something which I can estimate." *Id.* ¶ 45.

Michael claims that as consideration, he "agreed to sign documents drafted by BANA to rescind the foreclosure sale, agreed to forego $154,000 in excess proceeds due to him, and agreed to the Loan being reinstated against him and the Property." Doc. 28 at 12.

Defendant makes two arguments for the lack of a valid contract. First, Defendant claims there was no acceptance and meeting of the minds on the terms of any post-foreclosure agreement. According to Defendant, Michael's "alleged 'acceptance' of BANA's alleged 'offer' was not in 'strict compliance with the terms of the offer' because [Michael's] 'request' that 'repairs on the house be completed' was not part" of Defendant's original offer. Doc. 31 at 4. Defendant contends that Michael's response "introduced a new material contractual term (that 'repairs on the house be completed') and was a counteroffer, which BANA did not accept or assent to in writing." *Id.*

"Under contract law, the determination of a meeting of the minds, and thus offer and

acceptance, is based on an **objective standard**. Therefore, a contract can still be effective if signed by only one party. Specifically, if one party signs, the other may accept by his **acts, conduct, or acquiescence** in the terms of the contract." *Brown v. Mesa Distributors, Inc.*, 414 S.W.3d 279, 285 (Tex. App. 2013) (internal citations omitted) (emphasis added). Defendant's argument that it never accepted Plaintiffs' counteroffer seems contrary to Defendant's alleged words and conduct. In response to Plaintiffs' counteroffer, Defendant's counsel said Defendant was "currently obtaining bids from vendors with respect to the repairs/work needed at the property" and immediately followed this statement by saying Defendant has "also instructed me [counsel] to move forward with the sale recission process." Doc. 15 at 10.

The Court agrees with Michael that by showing that Defendant started the process of obtaining bids (conduct) and unequivocally stating that it was moving forward with the sale recission process (words), Michael has provided sufficient factual material to support acceptance (and therefore contract formation) on behalf of Defendant.

Next, Defendant claims that even if a contract were formed, Michael did not satisfy the condition precedent:

> [T]he Borrower's responsibility to provide the required documents to BANA in advance of the scheduled sale was a condition precedent to any performance by BANA. Because this condition was not satisfied (there is no evidence BANA told Plaintiff his obligation to provide documentation was satisfied), no performance was required of BANA aside from the obligations set forth in the mortgage documents.

Doc. 31 at 5.

The Court understands Defendant to be referring to Michael's alleged failure to supply all of the forms required for his loan modification application. However, contrary to Defendant's representation, Michael is alleging that he and Defendant entered into a valid contract *separate* from the loan contract. Defendant does not point to any authority indicating that a condition

precedent to the original mortgage contract would transfer automatically to a subsequent contract, such as the one allegedly formed here through email correspondence regarding foreclosure recession and property repairs. Moreover, Michael pleads that he was excused from performing on the alleged post-foreclosure contract because of Defendant's material breach (or alternatively, Michael pleads that Defendant repudiated Michael's dependent promise or prevented him from performing). Doc. 15 at 12-13. As Michael correctly notes, "[a]ccording to basic contract law, the non-breaching party would be excused from further performance under the contract." Doc. 28 at 17; *see also Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform.").

The Court finds that Michael has pleaded in sufficient detail a factual situation whereby a valid and enforceable post-foreclosure agreement was made and breached by Defendant. Thus, the Court finds Michael's breach of contract claim to be facially plausible and denies Defendant's Motion to Dismiss with respect to this claim.

### ii.   Common Law Fraud

Michael asserts a tort claim for common law fraud. According to Michael, Defendant represented that the foreclosure activity was paused, and that it would notify Plaintiffs if that changed. Michael alleges that these representations were false—Defendant was going forward with the foreclosure. Michael claims he relied on these representations by not paying off the loan and continuing to seek mitigation alternatives. Common law fraud exists where:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance on upon the representation; and (6) the party suffered injury.

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998).

The Federal Rules of Civil Procedure impose a heightened pleading standard for fraud allegations, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir.1997)). Rule 9(b) also provides that any state-of-mind requirement for a fraud claim "may be alleged generally." Fed. R. Civ. P. 9(b). Here, the Complaint sets forth the "who, what, when, where" of the alleged fraud:

> A few days after the application was submitted [in May 2022], Plaintiffs called BOA and spoke with Jansen Poole [the loan's loss mitigation case manager]. Jansen Poole confirmed that BOA received the application and Jansen Poole stated that foreclosure activity on the Property was on hold and paused while BOA reviewed the application. Jansen Poole also indicated that if foreclosure activity would be resumed, BOA would notify Plaintiffs.

Doc. 15 ¶ 18.

However, in-mid June, Plaintiffs became aware of a scheduled foreclosure sale of the Property. The Court finds no allegations that Defendant represented to Plaintiffs, at that point in time, that the foreclosure activity *was* paused—only that it *would be* paused once Defendant received the required outstanding documentation. Plaintiffs do not allege that Defendant ever told them that all the required documentation had been received. *See* Doc. 15 ¶ 25 ("On the same June 17, 2022 call . . . Meagan stated that the foreclosure sale scheduled for July 5, 2022 would not take place once the form 4506T was provided."); *id.* ¶ 29 ("On July 5, 2022, Plaintiffs called BOA to check the status of the loss mitigation application and spoke with Kathleen. Kathleen stated that BOA still needed a completed form 4506T. Plaintiffs stated they had already provided the completed form. Kathleen advised to send it again.").

In another case, a district court denied a defendant's motion to dismiss a plaintiff's common law fraud claim when the plaintiff alleged that the defendant foreclosed on his property after telling him "over the phone that no foreclosure sale would take place in April and Plaintiff would have time to submit the documents necessary to obtain a loan modification." *Mandala v. Wells Fargo Bank, N.A.*, No. CIV.A. 4:12-2335, 2013 WL 1828022, at *1 (S.D. Tex. Apr. 30, 2013). By contrast, here, Michael does not allege that, after the July 5 foreclosure sale was scheduled, Defendant represented to him that the sale would not take place while his incomplete loan application was pending.

Moreover, a promise to do an act in the future is not actionable fraud (because it does not constitute a misstatement of an existing fact) unless it is "made with the intention, design, and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). Michael does not plead sufficient facts to demonstrate that Defendant promised him it would cancel the sale (if he presented it with certain documents) *while knowing it would never do so*. *See Stolts v. Wells Fargo Bank, NA*, 31 F. Supp. 3d 876, 883 (S.D. Tex. 2014) ("[T]he facts do not demonstrate that . . . Defendant made a promise to consider a loan modification while knowing it would never do so."). Michael has not alleged that Defendant had no intention of putting the sale on hold if he submitted all required documents.

Michael counters this by arguing that that "false statements of opinion about a future event are actionable if, as Michael has alleged, the defendant: (1) purports to have special knowledge of facts that will occur in the future; (2) has present knowledge that the statement is false; and (3) offers an opinion based on facts known to be false." Doc. 28 at 19; *see Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex. 1983) ("An expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will

occur or exist in the future."). While the Court agrees that Defendant may have had special knowledge, the Court once again does not find that Michael has alleged facts that Defendant (particularly during the July 5 call with Kathleen) represented that the foreclosure sale was not proceeding that day.

Next, while the statute of frauds in Texas does not apply here because the loan agreement between parties is less than $50,000 in value, Defendant points to the "express language of the Deed of Trust, the parties' operative agreement, which states that 'Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing' and that any change or amendment to the Deed of Trust 'must be in writing' and signed by the party to be bound." Doc. 31 at 3. Michael does not allege Defendant provided a signed writing of the alleged representation, which was required by the Deed of Trust because it would have altered the terms of the parties' loan agreement.

Lastly, Defendant argues that, under Texas law, a "borrower's alleged reliance on a lender's purported oral promise not to foreclose his property before a particular date that was beyond the loan maturity date provided for in the written deed of trust is not 'justified' as a matter of law." Doc. 31 at 6. Another court in this district reached the same conclusion in a case with a similar fact pattern, finding that "the plaintiffs' reliance on alleged oral representations by customer service representatives that were contradicted by the terms of the loan agreement and the notice of foreclosure was not reasonable as a matter of law." *Luebano v. Seterus, Inc.*, No. CV H-13-0079, 2013 WL 12155019, at *1 (S.D. Tex. Mar. 28, 2013).

For the above reasons, the Court dismisses, with prejudice, Michael's common law fraud claim.

        **iii.**     **Negligent Misrepresentation**

Michael alleges that Defendant negligently misrepresented that the foreclosure process was on hold while Michael's loss mitigation application was pending and that it would inform them if it resumed and if a foreclosure sale was taking place. Michael claims he relied on these representations to not pay off the home or try to sell the home: "But for the representations, Plaintiffs would have paid the Loan off before the foreclosure sale and realized their full equity in the Property rather than try to continue loss mitigation alternatives with BOA." Doc. 15 ¶ 118.

Defendant argues that Michael's negligent misrepresentation claim fails because, "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x. 200, 205 (5th Cir. 2012). Defendant provides several authorities for the contention that oral promises not to foreclose are not actionable under a negligent misrepresentation claim. *See* Doc. 25 at 21 (listing cases).

Michael attempts to characterize Defendant's statements as statements of "existing fact, namely that the foreclosure process was 'paused' or 'on hold' and that the required documents had been 'updated into BOA's system.'" Doc. 28 at 21. However, in addition to not citing to on-point authorities, Michael again does not allege that, after he was notified of the July 5 foreclosure sale, Defendant made any representation to him that the outstanding documents had been received and the sale had been paused.

Thus, the Court dismisses, with prejudice, Michael's negligent misrepresentation claim.

### iv.     Fraud by Non-Disclosure

Michael alleges that Defendant had a duty to disclose the ongoing foreclosure activities because its previous representations were misleading or untrue. *See* Doc. 15 ¶ 124-136. For fraud by non-disclosure, Defendant must have possessed a duty to disclose:

> When particular circumstances impose on a person a duty to speak, silence can constitute a false representation. An affirmative duty to disclose may arise in four

> circumstances: (1) where there is a fiduciary or confidential relationship between the parties; (2) where a person voluntarily discloses information, he must disclose the whole truth; (3) when a person makes a representation and new information makes that earlier misrepresentation misleading or untrue; and (4) when a person makes a partial disclosure and conveys a false impression. . . .
>
> Where a duty to disclose exists, the elements of fraud by nondisclosure are (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 794 (S.D. Tex. 2007) (internal citations and quotation marks omitted).

The Court finds that the Complaint sets forth specific, non-conclusory allegations that adequately state a claim for fraud by nondisclosure. Michael alleges that, on June 17, Defendant's representative Meagan "stated that the foreclosure sale scheduled for July 5, 2022 would not take place once the form 4506T was provided." Doc. 15 ¶ 25. During that call, Michael allegedly also told Meagan that he intended to pay the loan off if the foreclosure sale was not postponed. *Id.* ¶ 26. Michael alleges that, shortly after this call, he provided Defendant with a completed form 4506T. *Id.* ¶ 27. On June 20, Defendant sent Michael a payoff statement, per his request. *Id.* ¶ 28. On July 5, Michael again spoke with Defendant (this time, representative Kathleen), who informed him that the form 4506T was still outstanding and advised him to send it again, without mentioning that the foreclosure sale was proceeding that very same day. *Id.* ¶ 29.

Defendant failed to inform Michael that the foreclosure sale was taking place *on the same day* it advised him to re-send the form 4506T (after representing to him that foreclosure proceedings would be paused once the form was received) and with knowledge that Michael would have paid off the loan if the sale was not paused. This omission satisfies the pleading standards to

survive a 12(b)(6) motion to dismiss on this claim. Thus, the Court denies Defendant's Motion to Dismiss with respect to Michael's claim for fraud by nondisclosure.

### v. Promissory Estoppel

Under Texas law, to establish a claim of promissory estoppel, Michael must show that: 1) Defendant made a promise, 2) Michael reasonably relied upon that promise to his detriment, and 3) injustice can be avoided only by enforcing the promise. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

#### a. Promises before Foreclosure

Michael alleges that Defendant communicated several promises to him before the foreclosure, including "assuring the foreclosure process on the Loan was paused and on hold; committing to inform Plaintiffs if the foreclosure process resumed; stating that the foreclosure sale scheduled for July 5, 2022, would not occur if Plaintiffs submitted additional documentation as requested by BANA." Doc. 28 at 7.

Defendant relies on the statute of frauds to assert that the promises were not made in writing, but in Texas, for the statute of frauds to apply, the loan agreement in question must exceed $50,000 in value. Tex. Bus. & Com. Code § 26.02(b) ("A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."). Here, it is undisputed by parties that the loan in question was less than $50,000—therefore, the statute of frauds does not apply to any promises Defendant allegedly made before foreclosure.

#### b. Promises after Foreclosure

Michael alleges that Defendant promised to rescind the sale and complete all work started by the third-party purchaser. Michael states that but for the promises, "Plaintiffs would not have

refrained for so long from securing and weather proofing the Property after SSS Fortune had abandoned their illegal construction work." Doc. 15 ¶ 146.

Defendant argues that Plaintiffs must show that Defendant promised "to sign a written agreement that complie[d] with the [s]tatute of [f]rauds." *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982). The Court agrees with Defendant that the recession of a sale falls in the statute of frauds and therefore must be in writing. *See, e.g.*, *Givens v. Dougherty*, 671 S.W.2d 877 (Tex. 1984) (holding that a "listing agreement for sale of real estate could not be orally rescinded" under the statute of frauds). The Court finds that Michael has pleaded in sufficient detail a factual situation whereby a valid and enforceable post-foreclosure agreement was made between parties in writing via email.

Defendant raises the same arguments as it did under the breach of post-foreclosure contract claim (e.g., no meeting of the minds occurred between the parties over email). Doc. 31 ¶ 8. For the same reasons the Court rejected Defendant's arguments above, it rejects them here, too.

Because the loan in question was less than $50,000 (and therefore is not subject to the statute of frauds), and because the post-foreclosure promises were in writing (email), the Court denies Defendant's Motion to Dismiss as to Michael's promissory estoppel claims.

IV. **CONCLUSION**

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss. Doc. 25. Uvalda's claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(1). The claims asserted by Michael for common law fraud and negligent misrepresentation are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6). The Court **DENIES** Defendant's Motion to Dismiss with respect to the claims asserted by Michael for breach of post-foreclosure contract, fraud by nondisclosure, and promissory estoppel.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 5th of February, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE